**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:            :    CHAPTER 7
                  :
Silver Fox, LLC,  :
                  :    CASE NO.:   07-19443  (NLW)
       Debtor.    :
                  :    **OPINION**

> **FILED**
> JAMES J. WALDRON, CLERK
> June 24, 2010
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY: /s/Diana Reaves, Deputy

**Before:**    **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Robert Schmidt, Esq.
Norris, McLaughlin & Marcus, PA
721 Route 202-206 North
Bridgewater, NJ 08807
Attorneys for Debtor/Debtor-in-Possession/Reorganized Debtor


Stephen B. McNally, Esq.
McNally & Associates, LLC
93 Main Street, Suite 201
Newton, NJ 07860
Attorneys for KK&S Enterprises, LLC

Two questions are before the court: (i) whether KKS Enterprises, LLC ("KKS") may set-off its prepetition claim against amounts it may owe the Debtor if certain real estate contracts are assumed by the Debtor, and (ii) whether the Debtor may utilize 11 U.S.C. § 365 to assume real estate contracts postconfirmation. As set forth below, both questions must be answered in the negative.

## JURISDICTION

The following constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and the Court has jurisdiction under 28 U.S.C. § 1334 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.

## STATEMENT OF FACTS

Silver Fox, LLC, the Debtor and Debtor-in-Possession, (the "Debtor") is a real estate development company whose only source of revenue and primary asset is a real estate project known as Falcon Ridge, located in the Borough of Hamburg, N.J. (the "Borough"). (First Modified Disclosure Statement, Docket #107 at p. 5) Initially, the Debtor was able to complete construction on 125 of an anticipated 242 residential units in Falcon Ridge by the end of 2000. (*Id.*) According to the Debtor, construction slowed when the Borough began withholding permits and approvals from the Debtor. (*Id.*) In 2000, the Debtor filed suit against the Borough for damages as a result of the Borough's failure to issue permits and approvals. This litigation is still pending in Superior Court of New Jersey, Sussex County. (*Id.*) A second action was filed by the Debtor against the Borough to recover money spent by the Debtor to cure a flooding problem allegedly caused by the Borough. This second action is also still pending in Superior Court of New Jersey, Sussex County. (*Id.*)

2

Despite the problems with the Borough and the related lawsuits, in October 2002, the Debtor and KKS entered into fifteen separate purchase agreements for the sale of residential units located in the Falcon Ridge development. (March 16, 2009 Certification of Assim Hanna ("Hanna Cert.") ¶ 3) For each of these fifteen properties, KKS placed a $2,000 deposit into escrow with the Debtor. Each of these agreements were fundamentally the same, and none of the contracts specified a closing date.

After these purchase agreements were signed, the Debtor continued to litigate with the Borough in State Court in an attempt to continue its real estate project. However, from early 2004 forward the Debtor was not able to obtain necessary approvals from the Borough, and as a result, the Debtor did not sell any additional units in the Falcon Ridge project. During the next two years, the Debtor notified the parties with whom it had contracted that their purchase agreements for units in Falcon Ridge were terminated. In August 2006, Debtor advised KKS that due to circumstances beyond its control, it must terminate its existing contracts with KKS. KKS rejected the Debtor's effort to terminate its contracts, arguing that the Debtor's conduct was improper and did not meet the standards for termination.

Construction financing for the Falcon Ridge Project was provided to the Debtor by Provident Bank. (Ambrosio Cert. ¶ 10) When the loan matured, the bank refused to further extend the loan and demanded payment on all of the Debtor's outstanding debt. (*Id.* ¶ 11) The Debtor was unable to obtain any other construction financing and as a result, the Debtor filed a voluntary Chapter 11 petition on July 3, 2007 (the "Petition Date"). (*Id*. ¶ 12)

During its Chapter 11 case, the Debtor moved to reject two purchase agreements with KKS in order to sell the residential units to other individuals at higher prices. Notably, the Debtor asserted that it made the motion simply as a precautionary measure, and explicitly stated that it

3

reserved the right to argue that it had validly terminated all KKS purchase agreements prior to bankruptcy. The Debtor's rejection motion was approved and KKS subsequently filed its claim for damages in the amount of $785,000.

The Debtor's First Modified Plan ("Plan") was confirmed by order dated December 24, 2008. Under the terms of the Plan, KKS was treated as part of Class 3, General Unsecured Claims. The Plan provides that Class 3 will be paid in full, over time, largely from future sales of Falcon Ridge residential units. As part of its description of Class 3, the Debtor specifically mentioned the KKS claim and reiterated its position that KKS does not hold a valid claim because its purchase agreements had been terminated pre-petition in accordance with New Jersey Law.

Executory contracts are addressed in Section G of the Plan as follows:

> The Debtor does not believe it is a party to any executory contracts. Most of the contracts the Debtor had entered pre-petition were deemed terminated by an order entered by the Bankruptcy Court on December 26, 2007. As described in Article II.C of the Disclosure Statement, the Debtor had entered numerous contracts with KK&S in or about October 2002. The Debtor believes that the contracts are executory. The Debtor intends to file an action to deem the contracts terminated pre-petition, or alternatively, to reject the KK&S contracts and the parties shall abide by further order of the Bankruptcy Court. Any Creditor asserting a Claim resulting from the rejection of an executory contract or unexpired lease not previously rejected shall file such Claim with the Clerk no later than thirty (30) days from the Confirmation Date, or they shall be forever barred from asserting such Claims.

(Plan Article III.G.1)

Thereafter, in March 2009, the Debtor filed a motion for an order declaring that the KKS purchase agreements were terminated pre-petition. The hearings on this matter took place on various dates scattered over several months. It was ultimately determined that the KKS pre-petition claim arising from the Debtor's disposition of residential units 272, 167 and 178 amounted to

4

$210,526.92. The court also rejected the Debtor's contention that the Debtor had validly terminated the KKS purchase agreements prior to filing its Chapter 11 petition.

As a consequence of the court's determination that the KKS purchase agreements had not been terminated pre-petition, the Debtor indicated that it wished to assume the five remaining purchase agreements. Three of the five residential units subject to purchase agreements with KKS are not yet built. However, residential units #168 and #274 have been constructed and are ready for sale. In the course of the hearings, KKS indicated that it had no objection to the assumption of the purchase agreements for these units, subject to its ability to setoff its damage claim ($210,526.92) against the aggregate purchase price of $291,000 ($295,000, less a $2,000 deposit for each). The Debtor objected and a further briefing schedule was permitted on the issue.

While the setoff issue was under consideration, the court alerted the parties to *In re Continental Airlines*, 134 F.3d 536, 542 (3d Cir. 1998) and *In re Norton*, 717 F.2d 767 (3d Cir. 1983). This court advised counsel that the cases appeared to be on-point and precedential regarding the issue of post-confirmation setoff. Both parties sought leave from the court to brief the issue prior to issuance of a court decision. KKS conceded the applicability of *Continental* and *Norton*. However, it pointed to Article III.G.1 of the Debtor's Plan to support an alternative argument that the Debtor is precluded from taking any action other than rejecting the KKS purchase agreements. The Plan provided that "the Debtor intends to file an action to deem the contracts terminated pre-Petition or alternatively, to reject the contracts and the parties shall abide by further order of the bankruptcy court." (Plan Article III.G.1) KKS argued that this language bound the Debtor to reject the executory contracts with KKS. In response, the Debtor filed a motion under Section 365 to assume the five remaining purchase agreements with KKS. Debtor argued that the Plan language did not bind the Debtor to reject the contracts. Rather, the Debtor argued that it was bound only to

5

seek a determination of whether the contracts were executory. At the hearing on this motion, the court determined that the reorganized post-confirmation Debtor could not use Section 365 to assume a contract. The court pointed out that the Plan did not contain any provision retaining jurisdiction to obtain assumption of the purchase agreements post-confirmation.

## **DISCUSSION**

The equitable doctrine of setoff gives a creditor the right to offset a mutual debt. The existence of the right to setoff is practical, so that "if A is indebted to B, and B is likewise indebted to A, it makes sense simply to apply one debt in satisfaction of the other rather than require A and B to satisfy their mutual liabilities separately." 5 *Collier on Bankruptcy* ¶ 523.01, 523-6 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.); *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995). Subject to certain exceptions not relevant to the matter at hand, § 553 of the Bankruptcy Code "does not affect a creditor's right of setoff, provided that both the creditor's claim against the debtor and the debtor's claim against the creditor arose before the debtor went into bankruptcy." *In re Anes,* 195 F.3d 177, 182 (3d Cir. 1999)(citing to *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)* 973 F.2d 1065, 1079 (3d Cir. 1992)). 11 U.S.C. § 553 provides in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a). Applying this setoff framework to the arguments advanced by the Debtor and KKS the issue presented is whether the respective debts are mutual prepetition debts. However, the threshold issue of KKS' ability to assert its setoff rights post-confirmation makes exploration of this

6

issue unnecessary.

### A.     Post-confirmation setoff

The Third Circuit Court of Appeals has held that "the right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim." *In re Continental Airlines*, 134 F.3d 536, 542 (3d Cir. 1998). In *Continental*, various federal agencies filed proofs of claim which in the aggregate totaled $14.5 million. *Id.* at 538. Several of the federal agencies objected to Continental's proposed plan and those objections were resolved prior to confirmation of the plan of reorganization. *Id.* Importantly, none of the proofs of claim asserted set-off rights, and prior to confirmation, none of the agencies amended their proofs of claim to assert a right to set-off. Nor did any of the federal agencies appealed the plan confirmation order. *Id.*

Approximately one month following plan confirmation, the Government Services Administration ("GSA") filed an amended proof of claim and asserted a right of setoff for the first time. *Id.* at 537-38. The GSA also filed a motion to set off its claim against the $4.8 million it owed Continental. The Bankruptcy Court denied the government's motion, which decision was affirmed by the District Court for the District of Delaware. *Id.* When the matter was further appealed, the Third Circuit affirmed the lower courts, relying on its earlier decision in *IRS v. Norton*, 717 F.2d 767 (3d Cir. 1983).

In *Norton*, the Internal Revenue Service ("IRS") sought to retain a tax overpayment due the debtors. The principal issue in *Norton* was whether the IRS' action violated the automatic stay. However, the court also held that once the debtors' Chapter 13 plan was confirmed, the government could not offset an outstanding tax refund against an outstanding tax liability where the debtors

7

made no provision for setoff in the plan. *Norton*, 717 F.2d at 774. The court specifically noted that the IRS had notice and opportunity to object to the Nortons' plan but did not do so. *Id.* Further, the court observed that under § 1327 property of the estate vests in the debtor on confirmation and comes free and clear of any claim or interest of any creditor provided for by the plan, unless the plan provides otherwise.[1] *Id.* Finally, the court commented that allowing setoff after plan confirmation "would seriously compromise the powers of the Bankruptcy Court, the capacity of debtors to rehabilitate, and the equitable distribution that the Bankruptcy Code is designed to foster." *Id.*

Like the creditors in *Continental* and *Norton,* KKS never asserted any set-off right until the post-confirmation period. No set-off right was asserted in its proof of claim, and KKS' objection to its treatment under the Debtor's Disclosure Statement and Plan simply centered on the Debtor's initial effort to separately classify its claim. Moreover, permitting KKS to assert a set-off right could undermine the Debtor's rehabilitation. Permitting KKS to assert a set-off right would reduce cash available to the reorganized Debtor and thereby impair the Debtor's ability to fund its plan. The Debtor's plan of reorganization is premised on the postconfirmation sale of residential units and creditors voted for the plan in the expectation that the plan would be funded from the sale of the residential units. Consequently, *Continental* and *Norton* are directly applicable, and KKS cannot assert a right to set-off its claim against amounts owed to the Debtor.

---

[1] Similarly, Section 1141(b) provides that except as otherwise provided, "the confirmation of a Plan vests all of the property of the estate in the debtor." Section 1141(c) ensures that "the property dealt with by the plan is free and clear of all claims and interests of creditors..." 11 U.S.C. § 1141 (2010).

**B.     No basis for post-confirmation assumption**

The Debtor's post-confirmation effort to assume the KKS purchase agreements for residential units #168 and #274 fails because it is not supported by Article III, Section G.1 of the Debtor's Plan. Section G.1 states unequivocally that "[t]he Debtor does not believe it is party to any executory contracts." Specifically with regard to the KKS agreements, Section G.1 declares that "[t]he Debtor believes that said contracts were terminated in accordance with non-bankruptcy law... The Debtor intends to file an action to deem the contracts terminated pre-petition, or alternatively, to reject the KK&S contracts and the parties shall bide by further order of the Bankruptcy Court." The Debtor is the sole plan proponent and sole drafter of its plan of reorganization. It is reasonable to expect that pursuant to 11 U.S.C. § 1123(b)(2), the Debtor incorporated in Section G.1 all of the remedies it intended to seek. It cannot now, as the reorganized Debtor, assert a right under § 365 to assume the KKS purchase agreements for residential units #168 and #274. Section 365 is not operative outside of a bankruptcy case. Having never provided for assumption of the KKS purchase agreement in its plan, the reorganized debtor cannot, post-confirmation, claim the ability to assume the agreements.

If the KKS purchase agreements have not been either assumed or rejected, what is their status? This court determines that the KKS purchase agreements simply pass through the bankruptcy, leaving the reorganized Debtor and KKS with whatever rights they enjoy under the contracts.

It has long been held that in a Chapter 11 case, "where a debtor has failed to expressly assume or reject a prepetition lease agreement or executory contract, that lease or contract will be unaffected by the bankruptcy filing." *In re Polysat, Inc.*, 152 B.R. 886, 890 (Bankr. E.D. Pa.

1993)(citations omitted). In *Polysat*, pre-bankruptcy, the debtor's predecessor entered into three railroad tank car leases with Union Tank Car Company ("UTCC"). *Id.* at 888. During its Chapter 11 case, Polysat continued to use the cars but did not either assume or reject the leases under § 365, or in its plan, pursuant to Code § 1123(b)(2). *Id.* After UTCC brought a state court action for nonpayment of the tank car leases and to obtain return of the tank cars, Polysat filed an adversary proceeding to enjoin UTCC's state court action. *Id.* at 889. Polysat claimed that confirmation of its plan resulted in rejection of the UTCC leases. *Id.* The court was not persuaded by Polysat's argument. It found that the debtor's failure to obtain court approval to reject the leases under § 365, and the failure to provide for rejection of the leases under its plan cause the UTCC leases to pass through the Chapter 11 cases "unaffected by the bankruptcy." *Id.* at 890-91. The Court further stated that the leases "remained valid postconfirmation, and postconfirmation breaches under relevant nonbankruptcy law may be asserted in a court of competent jurisdiction." *Id.* at 891.

The "ride through" doctrine applied in *Polysat* is persuasively explained in *In re JZ, L.L.C.*, 371 B.R. 412 (9th Cir. BAP 2007). The BAP points out that assumption or rejection of an executory contract is permissive under both § 365 and § 1123(b)(2).[2] *Id. at 422*. It also contrasted the flexible treatment of executory contracts with the requirements that § 365(d)(1) imposes on Chapter 7 cases, where if the trustee does not assume or reject an unexpired lease or executory contract it is deemed rejected. *Id.* at 423, The BAP further explained

> What is significant for our purposes about the more rigid provisions

---

[2] Section 365(a) permits a trustee, or debtor-in-possession to "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(2010). Section 1123(b)(2) provides that a Chapter 11 plan "may provide for the assumption, rejection or assignment of any executory contract," not previously rejected under section 365. 11 U.S.C. § 1123 (2010).

> pertaining to chapter 7 and to leases of nonresidential real property, is that they illuminate the greater flexibility that Congress afforded in Chapter 11 (and 9, 12 and 13) cases with respect to executory contracts. An executory contract that is not assumed in a chapter 11 case is not "deemed rejected." As a matter of straightforward statutory construction, it follows that some other alternative, i.e. "ride through," must be available."

*Id*. Finally, the BAP finished its analysis with a thorough review of the "ride through" doctrine under the Bankruptcy Act and its application by the First, Second and Fifth Circuits to cases under the Bankruptcy Code.[3] *Id*. 423-424.

The "ride through" doctrine is readily applicable to the KKS purchase agreements for residential units # 168 and # 274. The Debtor's effort to declare the agreements terminated prepetition was rejected by the Court. No motion to reject (or assume) the two agreements was made during the Chapter 11 case and the Debtor's plan did not provide for assumption or rejection of the agreements. Thus, the purchase agreements remain unaffected by the Chapter 11 case and whatever rights the reorganized Debtor and KKS enjoy under the purchase agreements likewise are unaffected by the bankruptcy.

---

[3] See, *Stumpf v. McGee (In re O'Connor)*, 258 F.3d 392, 404 (5th Cir. 2001); *Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship)* 21 F.3d 477, 484 (2d Cir. 1994); *Pub. Serv. Co. Of N.H. v. N.H. Elec. Coop., Inc. (In re Pub. Serv. Co. of N.H.),* 884 F.2d 11, 14-15 (1st Cir. 1989).

**CONCLUSION**

KKS may not assert a right of set-off for the first time in the post-confirmation period. The reorganized Debtor failed to provide for assumption of the KKS purchase agreements in its plan or reorganization and lacks authority to assume the agreements post-confirmation. Finally, the two KKS purchase agreements, having been neither assumed or rejected, passed through the bankruptcy case unaffected.

Dated: June 24, 2010    _____/s/_____
NOVALYN L. WINFIELD
United States Bankruptcy Judge